IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUNA D. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 5219 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| REALTY CONSULTING SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shauna Nelson has brought a three count complaint against her former employer, defendant Realty Consulting Services, Inc., alleging that defendant terminated her employment in retaliation for her support of her husband's charge of racial discrimination against defendant. Counts I and II are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 respectively. Count III alleges a claim for retaliatory discharge under Illinois common law. Defendant has moved for summary judgment on all counts. For the reasons that follow defendant's motion is granted.

## FACTS

Defendant is a property management company incorporated in Illinois and operating in Illinois and Indiana. Lawrence Irwin is its owner and president. Irwin's assistant, Mary Graffeo was responsible for handling defendant's payroll. Shane Adams, Irwin's daughter, is defendant's director of operations.

Defendant hired plaintiff in December 2004 as a leasing consultant for Greenbrier Apartments, an eight-building 135 unit apartment complex in Indiana. Greenbrier is defendant's only property in Indiana. Plaintiff was promoted to property manager for Greenbrier in January 2005. Her duties included managing everything at the property, including supervising all

personnel, making decisions about what needed to be done and showing people around the property.

In June 2006 plaintiff arranged to have her husband Victor interview for a cleaner/janitor position at Greenbrier. At that time there were no full-time cleaners at the property. At the interview, Victor, with whom plaintiff had a stormy on again off again relationship, disclosed that he had a minor criminal background involving domestic issues prior to his marriage to plaintiff.[1] Despite this background Adams hired Victor. According to plaintiff, Adams agreed to pay Victor $24,000 per year. According to Adams, she and Victor agreed that he would be paid approximately $10 per hour for 90 days and then his salary would be reconsidered. Defendant paid Victor at the rate of approximately $20,000 per year for the first 90 days of employment. After 90 days his pay was raised to $24,000 per year and after another 90 days his salary was raised again to $26,000 per year.

In early July 2007 Victor asked Adams if he could be transferred to another property because he could not work for plaintiff. He told Adams that he and plaintiff were "having problems." Adams checked, but did not have an opening for Victor at any other property. Victor resigned on July 9, 2007. He also moved out of his home with plaintiff on that same day, but according to plaintiff returned to the home about a week later. Adams learned of Victor's resignation when plaintiff called to tell her. Victor informed defendant that he wanted his last paycheck sent to his grandmother's house.

---

[1] According to plaintiff she and Victor were married, divorced for about a week, and then remarried.

Plaintiff recommended that Adams hire Josh Miller to replace Victor. Adams hired Miller who, like Victor, is African-American. Miller received $26,000 a year starting salary, the same salary Victor was receiving when he quit.

On July 11, 2007, two days after Victor quit, plaintiff learned from a conversation with another property manager that a Hispanic cleaner had just received a raise to $28,000 per year. Plaintiff knew nothing else about that cleaner, including his experience, length of service with defendant or length of service at the property at which he worked, or his duties at that property.

On August 7, 2007, plaintiff spoke with Adams over the telephone regarding Victor's salary. Plaintiff was angry that Miller, Victor's replacement, started at $26,000 per year when Victor had started at $20,000, and complained that Adams had promised Victor would start at $24,000 per year. Adams testified that plaintiff "yelled at her" during this conversation, and that eventually she ended up yelling back. Plaintiff denies ever raising her voice but claims Adams yelled at her. Plaintiff did not mention the Hispanic cleaner during this conversation. Plaintiff claims that she and Victor went to the Gary Human Rights Commission that same day (August 7, 2007) so Victor could file a charge of discrimination against defendant. In that charge, which was submitted on August 14, 2007, Victor claims that he learned on July 11, 2007, (the day after he resigned) that a Hispanic cleaner with the same job title was receiving a hirer salary. On August 15, 2007, the day after Victor submitted the charge, plaintiff attended a property manager's meeting at defendant's corporate office in Inverness, Illinois. Defendant claims that plaintiff was verbally combative at the meeting, trying to get her points across.

The EEOC Indianapolis District Office received Victor's charge on August 16, 2007. It issued its notice of charge of discrimination on August 17, 2007. Defendant learned of the charge sometime between August 17 and August 21, 2007.

On August 21, 2007, Graffeo called plaintiff and asked her complete a "Termination Description Form" for Victor. Plaintiff initially refused, questioning why such a form was necessary when Victor was not terminated by defendant but had resigned. Plaintiff also questioned the timing of the request since Victor had been gone for six weeks. The form merely documents the employee's name, job description, start and end date, ending salary, and health insurance status, and also contains an area for an explanation of the circumstances of the termination. Graffeo told plaintiff to fill the form out any way she wanted, and plaintiff admits that Graffeo did not tell her what to put on the form. Adams testified that the form is placed in an employee's file when an employee who has resigned does not turn in a letter of resignation and that the form is simply an explanation of why the person is no longer employed by defendant. Plaintiff "took offense" at Graffeo's request, taking the position that she was being asked to falsify documents. Graffeo told her "I am not going to argue with you. Just send it up." Graffeo then told both Adams and Irwin about plaintiff's refusal to complete the form.

Plaintiff completed the form later that day. For the explanation she wrote:

> I don't have an explanation for the description of termination, because Victor wasn't terminated he resigned. I was called by Mary Graffeo requesting this form 8-27-07 but I explained to her that I've never filled one out before for any other employee who resigned only those who were terminated. In obedience to what I've been asked to do from Mary (corporate) I have complied in filling out this form.

Adams and Irwin then met to discuss plaintiff's initial refusal to complete the form and her yelling at Adams on the phone. They decided that plaintiff no longer exhibited sound

4

judgment, and the next day they went to Greenbrier properties and terminated plaintiff's employment.

## DISCUSSION

Summary judgment is appropriate if the evidence demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial.: Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelly & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994).

In Counts I and II plaintiff alleges that defendant terminated her for participating in Victor's charge of discrimination in violation of Title VII and § 1981.[2] Under both statutes it is illegal for an employer to take an adverse employment action against an employee for opposing impermissible discrimination or participating in an investigation, proceeding, or hearing under Title VII. See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th 2003); 42 U.S.C. § 2000e-3(a).

---

[2]A plaintiff may bring a claim for retaliation under both 42 U.S.C. § 1981 and under Title VII. See CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008). The methods and order of proof for claims under both statutes are the same. Alexander v. Wis. Dep't of Health and Family Services, 263 F.3d 673, 682 (7th Cir. 2001). Therefore, the court discusses both sections together.

5

The protection is not absolute, however, and employees are not given a free pass to participate in completely groundless claims. "Utterly baseless claims do not receive protection under Title VII." Mattson v. Caterpillar, Inc., 359 F.3d 885, 890 (7th Cir. 2004). Just as there is nothing improper about disciplining an employee for filing frivolous complaints, there is nothing improper about disciplining an employee for participating in a frivolous claim. Id. (citing McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996)). To receive Title VII protection, a plaintiff's participation in the underlying claim must be both subjectively and objectively reasonable and done in good faith. Mattson, 359 F.3d at 891.

Defendant argues that plaintiff's participation in Victor's claim was neither reasonable nor done in good faith. According to plaintiff, her belief that Victor may have been subject to racial discrimination is based on the fact that he was denied access to overtime work, that a corporate document indicated that he was earning less than promised, that she learned that the Hispanic cleaner was earning more than Victor and that Victor's replacement started out earning the same pay that Victor earned when he left.

None of these "facts" could possibly give plaintiff reasonable grounds to believe that Victor had been discriminated against because none have anything to do with his race. Plaintiff admitted that she knew of no employee similarly situated to Victor who had been treated differently, except for perhaps the Hispanic cleaner who had "just" been given a raise to $28,000 per year when Victor quit. Yet plaintiff admitted that she had no knowledge about that cleaner, and had no basis on which to conclude that he was similarly situated to Victor. She did not know, for example, the cleaner's experience, number of years with the company, the size of the property that he cleaned, or his job duties at the property. Plaintiff also admitted that despite the

one corporate document that indicated that Victor was earning $25,000 when he quit, he was in fact earning $26,000 per year. Nor can the fact that Victor's replacement started at the same pay rate that Victor ended at demonstrate race-based discrimination, because they were both African-Americans.

It is true, as plaintiff argues, that a plaintiff need not have opposed an action that violated Title VII to prevail on a retaliation claim. Fine v. Ryan Intern. Airlines, 305 F.3d 746, 752-53 (7th Cir. 2002). The employee's belief that she was opposing a violation of Title VII must, however, be a good faith objectively reasonable belief. "[T]he allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." Id. (quoting Little v. United Technologies, 103 F.3d 956, 960 (11th Cir. 1997)). Plaintiff has been unable to point to a single fact in the record to support a belief by her that Victor might have been discriminated against on the basis of his race.[3] Consequently, plaintiff's actions are not protected by Victor's claim and defendant's actions, even if retaliatory, do not violate either statute. Accordingly, defendant's motion for summary judgment on Counts I and II is granted.

Count III alleges a claim for common law retaliatory discharge under Illinois law. Even assuming Illinois law applies (defendant argues that Indiana law should apply), the claim is pre-empted by the Illinois Human Rights Act. 775 ILCS 5/1-101 et seq. That Act preempts court claims where the basis for the claim arises from the matter covered by the Act. Plaintiff's claim that she was terminated for refusing to participate in an activity that violated federal law is inexplicably intertwined with her claim that she was retaliated against for participating in

---

[3]Not surprisingly (although not determinative to the instant case), on July 7, 2008, the EEOC closed its file on Victor's charge, indicating that it was unable to conclude that the information obtained establishes a violation of the statutes.

Victor's claim. She was an at-will employee. Absent her participation in Victor's claims she could be terminated for any reason without liability by defendant. See Blount v. Stroud, 232 Ill.2d 302, 311-12 (2009). Plaintiff's argument that she has an independent claim that she was terminated for her questioning defendant's instruction to lie to a federal agency is belied by her own admission that she was never told what to put as the reason for Victor's termination, and in fact was told to put what ever she wanted on the termination form. Accordingly, defendant's motion for summary judgment on Count III is granted.

## CONCLUSION

For the reasons set forth above defendant's motion for summary judgment is granted.

**ENTER:** **August 23, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**